UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RICHARD GOLDMAN, )
 )
        Plaintiff, )
 )
v. ) Civil Case No. 15-2172 (RJL)
 )
FIAT CHRYSLER AUTOMOBILES )
US, LLC, *et al.*, )
 )
        Defendants. )
 )

**FILED**

**SEP 3 0 2016**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

MEMORANDUM OPINION
(September 30, 2016)

Plaintiff Richard Goldman ("plaintiff"), a member of the New York Bar proceeding *pro se*, brings this action against defendants Fiat Chrysler Automobiles US, LLC ("Fiat"),[1] Safety Net Promotions ("Safety Net"), and John Does 1–10 (collectively "defendants") alleging breach of contract, tortious inference with contractual relations, and "tortious prevention of plaintiff from completing added requirements for the contract." Plaintiff does not allege any claims arising under federal law. Upon consideration of the Amended Complaint and the relevant law, the Court shall *sua sponte* REMAND the case to the Superior Court of the District of Columbia.

---

[1] Defendant Fiat claims plaintiff erroneously sued it as "Fiat Chrysler Automobiles US LLC" instead of its proper name "FCA USA, LLC." The Court will refer to the parties as they are named by plaintiff in the Amended Complaint.

## BACKGROUND

This case brings a whole new meaning to the term "shell game." Plaintiff resides in New York, but on October 12, 2013 he was in Washington, D.C. and attended an event called "Taste of D.C." Pl.'s Am. Compl. ¶¶ 1, 11. Fiat sponsored a promotional contest at the event, which was administered by Safety Net, a promotion company. The contest involved the display of a four-door Fiat automobile, the rear cargo area of which was brimming with bags of dry pasta. *Id.* ¶ 14. A sign posted near the display read, "Guess the number of pasta shells & you can win a new Fiat!" *Id.* ¶ 12. The sign noted the value of the prize Fiat was "up to $20,000," *id.* Ex. A, and plaintiff likewise states that the value of the Fiat was up to $20,000, *id.* ¶ 35. Plaintiff alleges that upon encountering the contest he asked one of defendants' employees about how to enter to win the car, and he was told that all he had to do was guess the correct number of pasta shells on display within the car and fill out the contest entry form. *Id.* ¶ 14. After standing in a line of other contest entrants, plaintiff began filling out his entry form. *Id.* ¶ 20. He alleges that another contest employee then advised him that his guess of the number of pasta shells "should be written out as a five digit number like between 10,000 and 50,000 and then entered as a code through the keypad on an electronic safe." *Id.* ¶ 21. If the guess was correct, the safe would open. *Id.* Plaintiff maintains that there were no other posted instructions or specifics regarding the contest rules. *Id.* ¶ 22.

At this point, plaintiff had concluded that the pieces of pasta on display in the Fiat were not actually "pasta shells," which he maintains "are a particular variety of pasta noodle . . . having a shell-like shape," *id.* ¶ 17, but instead were bucatini and dumplings,

*id.* ¶ 15. Because it was plaintiff's opinion that there were no "pasta shells" in the vehicle, he believed that the winning number was zero. *Id.* ¶ 19. Informing this conclusion was plaintiff's inference that the contest was actually a test of knowledge of Italian culture given Fiat's efforts to educate American consumers about Italy. *Id.* ¶¶ 43, 45. But when plaintiff inputted "00000" into the safe, it did not open and he was not awarded the Fiat. *Id.* ¶ 25. Thereafter, he complained to Fiat's customer relations department and to the Office of the Attorney General of the District of Columbia. *Id.* ¶¶ 27, 28. Fiat submitted a letter to the Attorney General's investigator explaining that contest entrants were to guess a number between 10,000 and 50,000 and that the winning number that was programmed into the safe was a randomly generated number within that range. *Id.* Ex. F.

Plaintiff filed the present suit against defendants in the Superior Court of the District of Columbia on November 5, 2015. He requested the following damages in his Complaint:[2] (1) the value of the Fiat, which he stated was $20,000, plus interest and inflation, or specific performance of provision of a new Fiat, plus interest; (2) the amount of the taxes and registration fees that would need to be paid on the Fiat, which he estimated to be $7,997; (3) a sum of $12,000, which he estimated to be the amount he spent repairing his own vehicle that he alleges he would not have had to spend had he been awarded the Fiat; (4) the approximately $7,000 he spent as a result of vehicular inefficiencies on his own vehicle that alleges he would not have had to spend had he been awarded the Fiat;

---

[2] Additionally, plaintiff sought declaratory relief in the form of a judgment that an enforceable contract existed between the parties, that defendants acted with fraudulent intent and bad faith in construction of their contest and in depriving plaintiff of the prize, and that defendants acted with intent and bad faith to tortiously interfere and deprive plaintiff of the prize.

3

(5) the roughly $71,575 he spent purchasing a new vehicle after his own vehicle needed to be replaced that he alleges he would not have had to purchase had he been awarded the Fiat; (6) the value of the time he has spent pursuing his prize, which he estimates to be $25,000; and (7) reasonable costs and fees, including attorney's fees. Compl. 9–13. Fiat removed the action to this Court on December 1, 2015 on the purported basis of diversity jurisdiction. Thereafter, on January 4, 2016, plaintiff filed an Amended Complaint, which defendants Fiat and Safety Net moved to dismiss for failure to state a claim on January 19, 2016 and March 22, 2016 respectively. *See* Fiat's Mot. to Dismiss [Dkt. #19]; Safety Net's Mot. to Dismiss [Dkt. #42].

It goes without saying that "[f]ederal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Jurisdiction "goes to the foundation of the court's power to resolve a case, and the court is obliged to address it *sua sponte*." *Doe by Fein v. District of Columbia*, 93 F.3d 861, 871 (D.C. Cir. 1996). Fiat asserts that subject matter jurisdiction lies under 28 U.S.C. § 1332(a), which grants federal district courts jurisdiction "of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," and where the dispute "is between . . . citizens of different States." *See* Notice Of Removal 3–4 [Dkt. #1]. Typically, when assessing whether the amount in controversy exceeds $75,000, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938). However, if it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount," dismissal is warranted. *Id.* at

289. Our Circuit Court has explained that "the Supreme Court's yardstick demands that courts be very confident that a party cannot recover the jurisdictional amount before dismissing the case for want of jurisdiction." *Rosenboro v. Kim*, 994 F.2d 13, 17 (D.C. Cir. 1993) (citing *Martin v. Gibson*, 723 F.2d 989, 991, 993 (D.C. Cir. 1983) (per curiam)). Although this standard is exacting, it has been met here.

The Court, of course, assesses the amount in controversy according to the damages claimed in plaintiff's original Complaint, which was operative at the time of removal.[3] *See Paley v. Ogus*, 20 F. Supp. 2d 83, 93 (D.D.C. 1998) ("[S]atisfaction of the jurisdictional amount is determined by the amount of damages that the plaintiff claims at the initiation of the lawsuit."). As an initial matter, the $25,000 of costs and the unspecified amount of attorney's fees plaintiff claims to have incurred pursuing his claim cannot be counted towards the amount in controversy.[4] *See* 28 U.S.C. § 1332(a) (amount in controversy must exceed $75,000, "exclusive of interest and costs"); *Alston v. Flagstar Bank, FSB*, 609 F. App'x 2, 4 (D.C. Cir. 2015) (per curiam) (stating "out-of-pocket litigation expenses" do not "count towards the amount in controversy"); *Griffin v. Coastal Int'l Sec., Inc.*, No. 06-2246, 2007 WL 1601717, at *3 (D.D.C. June 4, 2007) ("Courts in this District have determined that attorney's fees do not count towards the amount in controversy requirement unless they are provided for by a contract in issue or by a statute in controversy." (internal citation and quotation marks omitted)). Next, plaintiff seeks

---

[3] Regardless, the damages sought in the Amended Complaint are substantially similar. *See* Amended Compl. 14–16.
[4] The Court does not intimate a position on whether or not plaintiff could actually recover these sums. It merely states that they cannot be included in the calculation of the amount in controversy for purposes of diversity jurisdiction.

compensatory damages in the form of the value of the Fiat or provision of a new Fiat and the consequential damages he claims to have suffered as a result of not being promptly awarded his prize, including the amount he spent on a new vehicle. *See Bay Gen. Indus., Inc. v. Johnson*, 418 A.2d 1050, 1057 (D.C. 1980) (explaining that under District of Columbia law "[b]oth incidental (special) and consequential (general) damages are intended to compensate a party for the loss incurred by the other's breach, i.e., 'compensatory'"). Plaintiff does not request punitive damages.[5] "Compensatory damages are awarded in order to 'make plaintiffs whole for the harms that they have suffered as a result of defendants' actions.'" *Flythe v. District of Columbia*, Civ. No. 10-2021, 2016 WL 4506965, at *11 (D.D.C. Aug. 26, 2016) (quoting *Hendry v. Pelland*, 73 F.3d 397, 402 (D.C. Cir. 1996)). Under District of Columbia law, "in the absence of punitive damages a plaintiff can recover no more than the loss actually suffered." *Snowden v. D.C. Transit Sys., Inc.*, 454 F.2d 1047, 1048 (D.C. Cir. 1971). Under this "cardinal principle of law," it

---

[5] Although courts are to "consider *claims* for punitive damages when determining a jurisdictional amount, as long as those damages have 'at least a colorable basis in law and fact,'" *Parker-Williams v. Charles Tini & Associates, Inc.*, 53 F. Supp. 3d 149, 153 (D.D.C. 2014) (quoting *Kahal v. J.W. Wilson & Assocs., Inc.*, 673 F.2d 547, 549 (D.C. Cir. 1982) (emphasis added)), this Court is aware of no authority stating it should consider the *potential* for punitive damages where they have not been requested. *Cf. Lurie v. Mid-Atl. Permanente Med. Grp., P.C.*, 729 F. Supp. 2d 304, 334 (D.D.C. 2010) (declining to consider a vague claim for punitive damages for purposes of the amount in controversy where the party "fail[ed] to identify the specific claims for which it believe[d] imposition of punitive damages [was] appropriate" despite the party's allegation of "facts in connection with [its] fraud claim which if properly proven would entitle it to recover punitive damages"); *Brealey v. Cox Communications*, No. 10cv853-L, 2010 WL 1727854, at *2 (S.D. Cal. 2010) (finding that because the plaintiff did not ask for punitive damages, they could not be included in amount in controversy calculation); *Ecker v. Ford Motor Co.*, No. CV0206833SVWTJLX, 2002 WL 31654558, at *2 (C.D. Cal. 2002) (stating that "because Plaintiff does not seek punitive damages, Defendant cannot include punitive damages in calculating the amount-in-controversy simply because Plaintiff *could* seek punitive damages").

is clear "that an 'injured person may [not] have more than full satisfaction, except as punitive damages. He has no right to make profit from his harm . . . ." *Id.* (quoting *McKenna v. Austin*, 134 F.2d 659, 664 (D.C. Cir. 1943) (alteration in original)).

Plaintiff's prayer for relief here seeks the value of the Fiat, which is approximately $20,000, or the award of a new Fiat. He then separately seeks the approximately $71,575 that he spent on a new vehicle. But, as a matter of law, plaintiff may not be enriched through an award of compensatory damages; rather, he may only be made whole. *See Medina v. District of Columbia*, 643 F.3d 323, 326 (D.C. Cir. 2011). Therefore, plaintiff cannot be awarded *both* a new Fiat or the value of the Fiat he claims to have been wrongfully denied *and* the value of *another* new—and astronomically more expensive—vehicle. It is thus apparent, to a legal certainty, that an award of the $71,575 plaintiff spent on his new vehicle would be a windfall not contemplated by compensatory damages. After subtracting the $25,000 that does not count towards the amount in controversy and the $71,575 plaintiff cannot recover as compensatory damages, the amount in controversy falls to a mere $46,997.[6] This amount is so far below that required for this Court to exercise original jurisdiction in this case based on diversity of citizenship that even were plaintiff's estimates later found to be "low-balled" the Court is satisfied that the amount in controversy would still not exceed the $75,000 requirement.

---

[6] Having arrived at this number, the Court need not and does not assess whether or not it appears to a legal certainty that plaintiff could not recover the remainder of the damages he claims, including the taxes on the Fiat and the money he spent repairing and fueling his old vehicle.

## CONCLUSION

Thus, for all the reasons set forth above, the Court lacks subject matter jurisdiction and REMANDS this case to the Superior Court of the District of Columbia. *See* U.S.C. § 1447(c). I will gratefully leave it to that court to solve the "pasta shell" issues, if any, embedded in this epicurean contest. An Order consistent with this decision accompanies this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge